Christopher J. Dalton, Esq.
Lauren J. Glozzy, Esq.
BUCHANAN INGERSOLL & ROONEY PC
Incorporated in Pennsylvania
550 Broad Street, Suite 810
Newark, New Jersey 07102
973-273-9800
*Attorneys for Defendant,*
  *The Nielsen Company US LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KIMBERLY STURMAN, | : Civil Action No. _____ |
| Plaintiff, | : |
| v. | : |
| THE NIELSEN COMPANY US LLC, HOMERO MONROY, JOHN DOES 1-5 AND 6-10, Jointly, Severally, and/or in the Alternative. | : **DECLARATION OF CHRISTOPHER J. DALTON, ESQ.** |
| Defendant. | : |

CHRISTOPHER J. DALTON hereby declares as follows:

1.     I am an attorney at law admitted in the state of New Jersey.  I am a shareholder in the firm of Buchanan Ingersoll & Rooney PC, attorneys for Defendant The Nielsen Company US LLC ("Nielsen" or "Defendant").  I make this declaration in support of Defendant's Notice of Removal.

2.     On July 10, 2019, plaintiff Kimberly Sturman ("Plaintiff") commenced an action in the Superior Court of New Jersey, Law Division, Ocean County, Docket No. OCN-L-001731-19.  A copy of all process and pleadings initially received by Nielsen are attached hereto as **Exhibit A.**

3.     The Complaint alleges that Nielsen violated the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 et seq., based on Plaintiff's allegations that she was discriminated against and subjected to a hostile work environment because of her status as a single mother, and that she was retaliated against for complaining of such alleged discrimination. Plaintiff seeks to recover compensatory damages for past and future loss of income and benefits, punitive damages, costs of suit and attorneys' fees.

4.     Nielsen received the Summons and Complaint on or about July 12, 2019.

5.     Plaintiff is a citizen of the State of New Jersey.

6.     Nielsen is incorporated in Delaware and has its principal place of business in New York.

7.     Defendant Homero Monroy is a citizen of Pennsylvania, residing in Yardley, Pennsylvania.[1]

8.     Nielsen's records indicate that Plaintiff had annualized earnings of approximately $128,000 during her employment with Nielsen, which was terminated on or around October 17, 2018.

9.     As such, this Court has original jurisdiction and this action is properly removable pursuant 28 U.S.C. § 1332 (a) as the amount in controversy exceeds $75,000.00 and there is diversity of citizenship between the parties.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Date: August 8, 2019                    */s/ Christopher J. Dalton*
                                         CHRISTOPHER J. DALTON, ESQ.

---

[1] The Complaint inaccurately states, upon information and belief, that Defendant Homero Monroy is a resident of New Jersey. Nielson's employment records reflect that Mr. Monroy is a resident of Yardley, Pennsylvania.

# **EXHIBIT A**

**LAW OFFICES OF ERIC A. SHORE**
Toni L. Telles, Esquire
Attorney ID: 00355-2009
Four Echelon Plaza ~ 8th Floor
201 Laurel Road
Voorhees, New Jersey 08043
(856) 433-6228
(856) 433-6230 - Telefax
ToniT@EricShore.com
Attorney for Plaintiff, Kimberly Sturman

| | |
|---|---|
| **Kimberly Sturman,**<br><br>Plaintiff,<br><br>vs.<br><br>**The Nielsen Company US LLC, HOMERO MONROY, JOHN DOES 1-5 and 6-10, Jointly, Severally, and/ or in the Alternative,**<br><br>**Defendants** | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION OCEAN COUNTY**<br><br>Docket Number<br>_____<br><br>Civil Action |

## COMPLAINT AND JURY DEMAND

On behalf of the Plaintiff
**KIMBERLY STURMAN**

The Plaintiff, Kimberly Sturman, residing in, Ocean County, New Jersey, by way of Complaint against the Defendants, NIELSEN and, John Does 1-5 and 6-10, Jointly, Severally, and in the Alternative, says:

## Preliminary Statement

This case is brought under New Jersey Law Against Discrimination ("LAD") for harassment, discrimination and retaliation in employment on the basis of sex, familial and marital status and disability status, and for a failure to accommodate her disability.

## Identification of the Parties

1.     Plaintiff, Kimberly Sturman (hereinafter "Plaintiff" or "Sturman") is an widowed, mother of two, at all relevant times hereto, was and is a resident of Ocean County in the State of New Jersey and was previously employed by Nielsen.

2.     Defendant The Nielsen Company US LLC, (hereinafter "Defendant" or Nielsen") is a private business maintaining a principal place of business and corporate residence in New York, New York, and at all times relevant was Plaintiff's employer, jointly and severally, and in the alternative within the meaning of the NJLAD.

3.     Defendant Homero Monroy, (hereinafter "Defendant Monroy" or "Monroy") is a male and is, upon information and belief, a resident of the State of New Jersey. At all times relevant herein, Monroy was a member of Defendant Nielsen's upper management as that phrase is understood within the meaning of the NJLAD and who was, by virtue of his position, the individual who delegate the authority to control the working conditions and/or environment of Plaintiff's employment. Monroy was, at all times relevant herein, Plaintiff's direct supervisor.

Mr. Homero is liable to the Plaintiff as an individual defendant based on his conduct as an aider and abettor of the discriminatory and harassing conduct of Defendants.

4. Defendants John Does 1-5 and 6-10 are individuals and/or entities who, on the basis of *respondent superior*, or, on the basis of their own acts, are liable to the Plaintiff for the reasons set forth in this Complaint.

## General Allegations

5. On or about September 11, 2017, Ms. Sturman began her employment with Defendant, the Nielsen Company UE LLC.

6. Ms. Sturman was a Client Service Director at Church & Dwight offices.

7. Ms. Sturman was hired by Nancy Clauss.

8. Ms. Clauss was aware of Ms. Sturman's status as a single mother with two children and accommodated Ms. Sturman upon her hiring, allowing for Ms. Sturman to work remotely two (2) days a week.

9. Ms. Clauss was aware that Ms. Sturman had previously unexpected lost her husband four (4) years prior, leaving Ms. Sturman a widow.

10. This accommodation was given to accommodate for Ms. Sturman's familial and marital status without an "end date" or expectation of a particular "end date."

11. In or around January, 2018, Ms. Clauss accepted a promotion and was no longer Ms. Sturman's immediate supervisor.

12. Ms. Clauss' successor as Ms. Sturman's immediate supervisor was Homero Monroy.

13. Upon information and belief, before her departure, Ms. Clauss informed Mr. Monroy of Ms. Sturman's familial and marital status and the accommodation Ms. Sturman received.

14. Upon information and belief, Ms. Clauss informed Mr. Monroy that the accommodation had been working without incident.

15. On or about February 1, 2018, Ms. Clauss' successor officially became Ms. Sturman's immediate supervisor.

16. Almost immediately, Mr. Monroy began discriminating against Ms. Sturman as a result of her familial and marital status.

17. Almost immediately, Mr. Monroy began discriminating and/or retaliating against Ms. Sturman due to her accommodation.

18. On or about February 9, 2018, Ms. Sturman had been working remotely.

19. She worked well over her scheduled shift for the day and had completed her assignments for the day, which included completing her quality checking and other various duties of her employment.

20. As Ms. Sturman had completed her tasks for the day, she "signed off."

21. After this, Mr. Monroy immediately called Ms. Sturman on the phone, with at least one coworker present.

22. Mr. Monroy began berating Ms. Sturman while on the call in the presence of her coworker.

23. Mr. Monroy accused Ms. Sturman of not being a "team player," referring to her responsibilities as a single mom.

24. On or about March 12, 2018, Defendant's Human Resources department conducted a "New Leader Assimilation" ("NLA") meeting.

25. The purpose of the meeting was to inquire as to the transition of the team from Ms. Clauss to Mr. Monroy.

26.     At this meeting, Ms. Sturman complained of the maltreatment from Mr. Monroy.

27.     Ms. Sturman specifically complained how Mr. Monroy treated her disparately from her coworkers.

28.     Ms. Sturman also complained about how Mr. Monroy treated her due to her accommodation.

29.     In doing so, Ms. Sturman engaged in protected conduct.

30.     Despite Ms. Sturman's complaints, nothing was done to investigate the disparate treatment.

31.     On or about March 19, 2018, Mr. Monroy asked Ms. Sturman to meet him, so that they could "get to know each other."

32.     During the meeting, Mr. Monroy stated that he had previously been a supervisor for another single mother and that this previous subordinate, the single mother, was never able to balance her work and her home life.

33.     Mr. Monroy then stated that she left the company, which he was stated was best for him and the company.

34.     It was clear to Ms. Sturman that Mr. Monroy's comments were directed at Ms. Sturman as a foreshadowing of what Mr. Monroy intended for Ms. Sturman, due to her status as a single mother.

35.     Mr. Monroy then immediately began discussing Ms. Sturman's "situation" – as he labeled it – referring to Ms. Sturman's status as a single mother to two young children.

36.     Ms. Sturman left the meeting feeling shocked and upset regarding the blatant discrimination towards her, due to her protected class and status.

37.     On or about April 4, 2018, Ms. Sturman became aware of Mr. Monroy's response to the NLA meeting, which was another meeting to discuss how to transition the team better.

38.     Mr. Monroy intentionally excluded Ms. Sturman from this meeting.

39.     Upon information and belief, throughout the month of April, 2018, Defendant received multiple complaints regarding Mr. Monroy's actions.

40.     Upon information and belief, HR refused to respond to these complaints.

41.     It became clear to Ms. Sturman that HR had no issue with Mr. Monroy's egregious and discriminatory actions.

42.     On or about May 2, 2018, Mr. Monroy met with Ms. Sturman, in what he called a "check-in."

43.     Mr. Monroy continued to belittle and berate Ms. Sturman due to her protected class and status, including by questioning whether Ms. Sturman had the ability to perform her job while also being a single mother of two young children and a widow.

44.     Mr. Monroy then stated he did not have to "like" Ms. Sturman in order to work with her.

45.     It quickly became clear to Ms. Sturman that this "check-in" was in direct response to the NLA meeting and the complaints Ms. Sturman had.

46.     Following the "check-in," Ms. Sturman met with Director Lawrence Morris.

47.     Ms. Sturman informed Mr. Morris what had occurred at the "check-in" and specifically what Mr. Monroy had stated to her regarding her protected class and status.

48.     In doing so, Ms. Sturman engaged in protected conduct.

49.     Mr. Morris witnessed Ms. Sturman visibly shaken.

50.     On or about May 14, 2018, Mr. Morris informed Compliance, of Ms. Sturman's complaints.

51.     In response, Integrity stated they could not take a report from Mr. Morris, and that instead, Ms. Sturman would have to make the report herself prior to Compliance engaging in any type of investigation regarding the incident.

52.     Fearing retaliation from Mr. Monroy, Ms. Sturman opted to not make an individual report.

53.     As such, Compliance failed to conduct any investigation into Mr. Morris' allegations against Mr. Monroy and the disparate treatment of Ms. Sturman due to her protected class and status.

54.     After the complaint, Mr. Monroy's hostility and harassment towards Ms. Sturman in regards to her protected status and class only increased.

55.     Throughout June and July, 2018, the hostile work environment began to have an adverse effect on her health.

56.     On or about July 5, 2018, Ms. Sturman sought medical treatment from a cardiologist due to the increased anxiety and stress caused my Mr. Monroy's harassing, disparate treatment.

57.     On or about August 1, 2018, Mr. Monroy confronted Ms. Sturman regarding her accommodations, asking "where in the company handbook does it say [Ms. Sturman] could work two days at home?"

58.     Mr. Monroy was extremely intimidating and Ms. Sturman felt threatened.

59.     Mr. Monroy then labeled Ms. Sturman as "entitled" due to the accommodations she received for her protected class and status.

60.     Ms. Sturman stated that she had previously cleared the accommodations with her previous supervisor, Ms. Clauss.

61.     HR allows multiple employees to work from home despite no provision being included in the handbook.

62.     In fact, Mr. Monroy was aware of other co-workers who worked from home without issue.

63.     Despite this, Mr. Monroy had issue with Ms. Sturman working from home due to her protected class and status as a single mother of two young children and as a widow.

64.     On or about August 6, 2018, Mr. Monroy then placed Ms. Sturman on a 60-day performance improvement plan.

65.     On or about August 7, 2018, Ms. Sturman attempted to take lead on a project, in accordance with her PIP.

66.     In response, Mr. Monroy specifically discriminated against and referenced Ms. Sturman's protected class and status when he stated that she "did not have enough time" to take lead on a project because she was a single, mother of two young children.

67.     Thus, it was clear to Ms. Sturman that her PIP had a direct relation to her protected class and status.

68.     On or about August 16, 2018, Ms. Sturman finally had enough courage to file a report to "Ethics and Compliance" regarding the disparate treatment and harassing comments from Mr. Monroy.

69.     Ms. Sturman made the complaint telephonically, specifically referencing the multiple occasions on which Mr. Monroy treated her disparately as a result of her protected status.

70.    Ms. Sturman also specifically made reference to the multiple comments Mr.
Monroy had made regarding her protected class and status as a single, widowed mother to young
children.

71.    In doing so, Ms. Sturman engaged in protected conduct.

72.    Nielsen Compliance claimed to have found enough evidence to investigate Ms.
Sturman's claims.

73.    On or about August 23, 2018, Ms. Sturman spoke with HR Compliance and gave
a more detailed report regarding the disparate treatment due to her protected class and status.

74.    In doing so, Ms. Sturman engaged in protected conduct.

75.    On or about August 31, 2018, HR Compliance admitted that Mr. Monroy
"seem[ed] to be having some issues with respecting people's boundaries."

76.    Upon information and belief, Mr. Monroy became aware of the investigation and
specifically the complaints made by Ms. Sturman.

77.    Throughout September, 2018, Mr. Monroy began specifically excluding Ms.
Sturman from "team" meetings.

78.    Mr. Monroy did so deliberately, to bar Ms. Sturman from performing the essential
functions and duties of her employment.

79.    Mr. Monroy specifically excluded Ms. Sturman from meeting that pertained to
Ms. Sturman's specific projects of which she was lead.

80.    Mr. Monroy did so to bar Ms. Sturman from completing her PIP.

81.    Mr. Monroy did so in direct retaliation to the complaints Ms. Sturman had made
to HR and the subsequent investigation.

82.     On or about September 12, 2018, Ms. Sturman requested another accommodation due to her increasing anxiety.

83.     Ms. Sturman asked to be transferred from Mr. Monroy's team to accommodate her anxiety.

84.     On or about September 19, 2018, Anna Waigand of Nielsen HR denied Ms. Sturman's request for an accommodation.

85.     Ms. Sturamn kept in contact with Ms. Waigand, as Mr. Monroy continued to intentionally ostracize Ms. Sturman from projects within the team.

86.     On or about September 27, 2018, Ms. Sturman was asked to be part of a team meeting.

87.     Mr. Monroy took this opportunity to berate Ms. Sturman and her work-product and, again, harassed and treated Ms. Sturman disparately due to her protected class and status.

88.     Following the meeting, Ms. Sturman immediately wrote to HR regarding the treatment, specifically stating that she knew Mr. Monroy "has something planned" in regards to her employment.

89.     Ms. Sturman beleived that Mr. Monroy was intentionally setting her up for failure due to her protected class and status and/or in retaliation to the complaints Ms. Sturman had made against Mr. Monroy.

90.     In doing so, Ms. Sturman engaged in protected conduct.

91.     In a subsequent email that same day, Ms. Sturman also noted, during a meeting with a client, Mr. Monroy belittled Ms. Sturman due to her disability – anxiety.

92.     In doing so, Ms. Sturman again engaged in protected conduct.

93.     On or about September 28, 2018, Ms. Sturman's PIP ended.

94. Ms. Sturman specifically requested Ms. Waigan be present for the performance review meeting due to the continuous disparate, harassing treatment, retaliation and sabotage from Mr. Monroy.

95. Despite this request, no performance review was conducted.

96. On or about October 3, 2018, Ms. Sturman again complained about the discrimination she felt from Mr. Monroy regarding her familial and marital status.

97. In doing so, she engaged in protected conduct.

98. On or about October 9, 2018, Compliance officially closed their investigation on Mr. Monroy.

99. Lauren Connell, of Nielsen Compliance Department, stated that Compliance was "not able to determine that Homero Monroy discriminated against you [Ms. Sturman] or others in any way based on the behavior you recounted."

100. On or about October 17, 2018, almost a month after Ms. Sturman's PIP officially ended, Ms. Sturman met with Mr. Monroy and Ms. Waigman for a performance review.

101. Ms. Sturman presented documentation regarding the improvements she was able to make on the PIP, in addition to documentation regarding each and every time Mr. Monroy intentionally ostracized her to sabotage her PIP compliance.

102. Despite this, Ms. Sturman was "severed from the company."

103. Ms. Sturman's termination was motivated in part and/or determined in part by Ms. Sturman's status as a single mother and/or in retaliation for her complaints regarding same.

## COUNT I

## LAD – "SEX PLUS" HARASSMENT

104.    Plaintiff hereby repeats and re-alleges the preceding and succeeding paragraphs as though fully set forth herein.

105.    As a result of Defendants' conduct, Plaintiff was subjected to severe and/or pervasive conduct that was because of Plaintiff's sex and/or gender and because Plaintiff was a single mother.

106.    The conduct was severe or pervasive enough to make a reasonable woman and/or single mother believe that the conditions of employment were altered and/or that the working environment was intimidating, hostile or abusive.

107.    The workplace did so alter.

108.    The Defendants are liable because they knew or should have known of the harassment and failed to take effective remedial measures to stop it.

109.    The Defendants are liable because they delegated the authority to control the working environment to Mr. Monroy, who abused that authority to create a hostile work environment.

110.    The Defendants are liable because they were negligent by failing to take reasonable steps to prevent the harassment from occurring.

112.    The conduct of Defendants was especially egregious.

113     The harasser was a member of upper management, as that phrase is understood within the context of the LAD, therefore punitive damages are appropriate.

WHEREFORE, Plaintiff demands judgment against the Defendants The Nielsen Company US LLC; Homero Monroy; John Does 1-5 and 6-10, jointly, severally, and/ or in the

alternative, together with compensatory damages, punitive damages, costs of suit, attorney's fees and enhancements, interest and any other relief the court deems equitable and just.

## COUNT II

### LAD – "SEX PLUS" DISCRIMINATION

115.   Plaintiff hereby repeats and re-alleges the preceding and succeeding paragraphs as though fully set forth herein.

116.   Plaintiff is member of a protected class under the LAD in that she is a woman and single mother.

117.   At all times relevant, Plaintiff was performing her job responsibilities up to and exceeding the legitimate expectations of her employer.

118.   Defendants' decision to terminate Plaintiff's employment was determined in part and/or motivated in part by her status as a woman and/or a single mother.

119.   The conduct of Defendants was especially egregious.

120.   Any other reason offered for Plaintiff's termination is pretext.

WHEREFORE, Plaintiff demands judgment against the Defendants The Nielsen Company US LLC; Homero Monroy; John Does 1-5 and 6-10, jointly, severally, and/ or in the alternative, together with compensatory damages, punitive damages, costs of suit, attorney's fees and enhancements, interest and any other relief the court deems equitable and just.

## COUNT III

### LAD – DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE

120.   Plaintiff hereby repeats and re-alleges the preceding and succeeding paragraphs as though fully set forth herein.

121.   Plaintiff was disabled within the meaning of the LAD.

122.     Plaintiff had been performing her job duties up to and exceeding the legitimate expectations of her employer and was able to perform the essential duties of her position with or without accommodation.

123.     Defendants were aware of Plaintiff's need for a reasonable accommodation.

124.     There was an accommodation that would have allowed Plaintiff to perform the essential functions of her job.

125.     Defendants failed to engage in the interactive process with Plaintiff.

126.     Defendants denied Plaintiff any accommodation.

127.     The conduct of Defendants was especially egregious.

128.     Anna Waigand, a member of Defendants' upper management, participated in the action of refusing to engage in the interactive process and refusing to accommodate Plaintiff, therefore punitive damages are appropriate.

WHEREFORE, Plaintiff demands judgment against the Defendants The Nielsen Company US LLC; Homero Monroy; John Does 1-5 and 6-10, jointly, severally, and/ or in the alternative, together with compensatory damages, punitive damages, costs of suit, attorney's fees and enhancements, interest and any other relief the court deems equitable and just.

## COUNT IV

## LAD – RETALIATION

129.     Plaintiff hereby repeats and re-alleges the preceding and succeeding paragraphs as though fully set forth herein.

130.     Plaintiff complained about the discriminatory harassment she suffered and/or opposed conduct she reasonably believed to be harassing.

131. Plaintiff's conduct in this regard was protected under the LAD.

132. Plaintiff was subsequently subject to severe and/or pervasive harassment by Mr. Monroy and was terminated by Defendant.

133. Because the unlawful harassment, discrimination and/or retaliation was undertaken by members of upper management and was undertaken intentionally, egregiously, maliciously and with a willful or wanton disregard for the rights of the Plaintiff, punitive damages are appropriate.

WHEREFORE, Plaintiff demands judgment against the Defendants The Nielsen Company US LLC; Homero Monroy; John Does 1-5 and 6-10, jointly, severally, and/ or in the alternative, together with compensatory damages, punitive damages, costs of suit, attorney's fees and enhancements, interest and any other relief the court deems equitable and just.

### COUNT V

### LAD – INDIVIDUAL LIABILITY – HOMERO MONROY – AIDER AND ABETTOR

134. Plaintiff hereby repeats and re-alleges the preceding and succeeding paragraphs as though fully set forth herein.

135. Defendant Steven Lind is liable for aiding and abetting Defendants to racially harass and discriminate against Plaintiff.

136. Defendant Steven Lind was, at all times relevant, generally aware of his role in the overall illegal and unlawful racially discriminatory and/or harassing conduct.

137. Defendant Steve Lind knowingly and substantially assisted the corporate Defendants in harassing and/or discriminating against Plaintiff and/or permitting a hostile, intimidating and/or abusive work environment.

138. Because the unlawful discrimination and/or harassment was undertaken by members of upper management, including Defendant Steve Lind, and was undertaken intentionally, egregiously, maliciously and with a willful or wanton disregard for the rights of the Plaintiff, punitive damages are appropriate.

WHEREFORE, Plaintiff demands judgment against the Defendants The Nielsen Company US LLC; Homero Monroy; John Does 1-5 and 6-10, jointly, severally, and/ or in the alternative, together with compensatory damages, punitive damages, costs of suit, attorney's fees and enhancements, interest and any other relief the court deems equitable and just.

## COUNT VII

## EQUITABLE RELIEF

139. Plaintiff hereby repeats and realleges the preceding and succeeding paragraphs as though filly set forth herein.

140. Plaintiff requests this Court declare the practices stated herein to be a violation of the LAD.

141. Plaintiff requests equitable reinstatement, with equitable back pay, equitable front pay and all benefits received by Plaintiff as a result of her employment equitably restored.

142. Plaintiff requests Defendants purge their files of any reference to Plaintiff's termination which this Court finds in violation of the LAD.

143. Plaintiff requests any other equitable relief this Court deems reasonable and just.

WHEREFORE, Plaintiff demands judgment against the Defendants The Nielsen Company US LLC; Homero Monroy; John Does 1-5 and 6-10, jointly, severally, and/ or in the alternative, together with compensatory damages, punitive damages, costs of suit, attorney's fees and enhancements, interest and any other relief the court deems equitable and just.

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve any and all physical, electronic and/or digital information or data pertaining in any way to Plaintiff's employment, to Plaintiff's allegations, causes of action or defense to Plaintiff's allegations or causes of action as well as any and all evidence pertaining to any party or employee of any party, including but not limited to physical, electronic and/or digital data (electronically stored information), web pages, social media profiles, pages or identities, emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, back-up and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook, ACT!), electronic spreadsheet files and file fragments, related to this matter. This includes a request that such information not be modified, altered or deleted as a result of data compression or disk fragmentation (or other optimizations procedures), which processes you are hereby directed to suspend until such time as that data can be preserved, copied and produced.

In terms of paper information, Defendants are directed to preserve any and all contracts and contract drafts, emails, memos and drafts of memos, handbooks (past and present), policies (past and present) and drafts, employment files, pay stubs or duplicates, spreadsheets, lists, reports, documents, notes, correspondence, photographs, investigative information or other documents which pertain in any way to the controversy, parties or witnesses in this matter.

## JURY DEMAND & TRIAL COUNSEL DESIGNATION

Plaintiff hereby demands a trial by jury.  Toni L. Telles, Esq. of the Law Offices of Eric

A. Shore is hereby designated trial counsel.

## RULE 4:5-1 CERIFICATION

I, Toni L. Telles, hereby certify the following:

1. I am an attorney, licensed to practice law in the State of New Jersey and am responsible

   for the above-captioned matter.

2. To the best of my knowledge and belief, this matter in controversy is not the subject of

   any other action pending in any Court or of a pending arbitration proceeding, nor is any

   such proceeding contemplated at this time.

**LAW OFFICES OF ERIC A. SHORE**

BY:_____

**TONI L. TELLES, ESQUIRE**
Four Echelon Plaza
201 Laurel Rd., 8th Floor
Voorhees, New Jersey 08043

Attorney for Plaintiff, Beverly Sturman

Date: July 10, 2019

**Appendix XII-B1**

|  | **CIVIL CASE INFORMATION STATEMENT**<br>**(CIS)**<br><br>Use for initial Law Division<br>Civil Part pleadings (not motions) under *Rule* 4:5-1<br>**Pleading will be rejected for filing, under *Rule* 1:5-6(c),**<br>**if information above the black bar is not completed**<br>**or attorney's signature is not affixed** | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|
| | | PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| | | CHG/CK NO. |
| | | AMOUNT: |
| | | OVERPAYMENT: |
| | | BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>Toni L. Telles, Esquire | TELEPHONE NUMBER<br>(856) 433-6228 | COUNTY OF VENUE<br>Ocean |
|---|---|---|
| FIRM NAME (if applicable)<br>Law Offices of Eric A. Shore | | DOCKET NUMBER (when available) |
| OFFICE ADDRESS<br>Four Echelon Plaza - 8th Floor<br>201 Laurel Road<br>Voorhees, New Jersey 08043 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND  ☑ YES  ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>KIMBERLY STURMAN | CAPTION<br>Kimberly Sturman v. The Nielsen Company US LLC, Homero Monroy and John Does 1-5 and 6-10 |
|---|---|
| CASE TYPE NUMBER<br>(See reverse side for listing)<br>618 | HURRICANE SANDY RELATED?<br>☐ YES  ☑ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☑ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☐ YES  ☑ No | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES  ☑ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)  ☐ NONE  ☑ UNKNOWN |

| **THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.** |
|---|

| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION |
|---|

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☑ YES  ☐ No | IF YES, IS THAT RELATIONSHIP:<br>☑ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)<br>☐ FAMILIAL  ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ YES  ☐ No |
|---|

| USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION |
|---|
| |

| ♿ DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES  ☑ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ YES  ☑ No | IF YES, FOR WHAT LANGUAGE? |

| I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b). |
|---|
| ATTORNEY SIGNATURE: |

# Civil Case Information Statement

## Case Details: OCEAN | Civil Part Docket# L-001731-19

**Case Caption:** STURMAN KIMBERLY  VS THE NIELSON COMPANY  US LLC

**Case Initiation Date:** 07/10/2019

**Attorney Name:** TONI TELLES

**Firm Name:** ERIC A. SHORE, PC

**Address:** 201 LAUREL RD 8TH FL

VOORHEES NJ 08043

**Phone:**

**Name of Party:** PLAINTIFF : Sturman, Kimberly

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Hurricane Sandy related?** «sandyRelated»

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO        **Title 59?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

07/10/2019

Dated

/s/ TONI TELLES

Signed